STATE OF VERMONT

RUTLAND, ss.

SUPERIOR COURT
DOCKET NO:
12 - 1 - 18 Rdcv

```
                                          )
LISA JOSSELYN,                            )
                                          )
              Plaintiff,                  )
                                          )
      v.                                  )
                                          )
BIG LOTS STORES, INC., JERRY              )
FARNUM, and JOSEPH CAMAR,                 )
                                          )
              Defendants.                 )
                                          )
```

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      The plaintiff, Lisa Josselyn ("Ms. Josselyn" or the "Plaintiff"), is a female resident of the State of Vermont, residing at 16 Campbell Road, Rutland, Vermont 05701. Rutland is in Rutland County, Vermont.

2.      The defendant, Big Lots Stores, Inc. (the "Company"), is a foreign corporation doing business in Vermont. The Company is incorporated in Ohio and its principal office is located at 300 Phillipi Road, Columbus, Ohio 43228.

3.      The defendant, Jerry Farnum ("Farnum"), is a younger, non-disabled individual who, upon information and belief, resides in Vermont. Farnum worked for the Company as a Store Manager and was Ms. Josselyn's supervisor from September 2015 until her termination on or around June 4, 2016.

4.      The defendant, Joseph Camar ("Camar") (the Company, Farnum, and Camar, collectively, the "Defendants"), is a younger, non-disabled individual. Camar worked for the

Company as a District Manager overseeing Company stores in Vermont. Camar supervised Farnum and likewise supervised Ms. Josselyn from April 2015 until her termination on or around June 4, 2016.

## JURISDICTION AND VENUE

5.    Venue is proper in Rutland County because the Plaintiff resides in Rutland County. 12 V.S.A. § 402.

6.    This court has personal jurisdiction over the Defendants because the Defendants have engaged in and transacted business in the State of Vermont, including by managing and/or operating a store in Rutland, Vermont and/or employing the Plaintiff in Vermont, and Plaintiff's causes of action stem largely from business transactions within the State of Vermont. Indeed, the Plaintiff was employed by the Company in the State of Vermont, was managed and reprimanded by the Defendants in the State of Vermont, and was terminated by the Defendants in the State of Vermont.

## STATEMENT OF FACTS

7.    Ms. Josselyn was born in December 1965 and is presently 52 years old. At all relevant times, Ms. Josselyn was over 40 years old.

8.    During all relevant periods, Ms. Josselyn suffered from diagnosed anxiety and depression disorders. Ms. Josselyn's anxiety and depression disorders substantially limited one or more of her major life activities, including, but not limited to, her ability to sleep, concentrate, focus, communicate, and interact with others.

9.    Thus, during all relevant periods, Ms. Josselyn's anxiety and depression disorders constituted disabilities under federal and state law.

10.     Ms. Josselyn's anxiety and depression disorders are also serious health conditions and/or serious illnesses under state and federal law because her anxiety and depression disorders were chronic conditions that required periodic visits to her health care provider (her "therapist") and/or because they caused episodic incapacity.

11.     On or around May 1, 2006, Ms. Josselyn began working for the Company as a Customer Service Specialist.

12.     During all relevant times, Ms. Josselyn worked at a Company store located at 303 US-4 in Rutland, Vermont (the "Rutland Store").

13.     During all relevant times, the Company was an employer subject to the Family and Medical Leave Act ("FMLA") because the Company was an enterprise engaged in interstate commerce and the Company employed 50 or more employees for each working day during each of 20 or more calendar weeks in the relevant calendar years.

14.     Furthermore, the Company employed 50 or more employees at and/or within 75 miles of the Rutland Store.

15.     During all relevant times, the Company was an employer under the Vermont Parental and Family Leave Act ("PFLA") because the Company did business in and/or operated within the State of Vermont and employed 15 or more individuals for an average of at least 30 hours per week during all relevant years.

16.     From 2006 to 2015, Ms. Josselyn received annual performance evaluations from the Company.  From 2006 to 2015, Ms. Josselyn was rated as "exceeds expectations" in each of her evaluations.

17.     In or around 2009, as a result of her above average performance, Ms. Jossleyn was promoted to Associate Manager.  Further, in or around June 2015, as a result of Ms.

Josselyn's continued exemplary performance, Ms. Josselyn was promoted to Assistant Team Lead – Merchandizing.

18.     In or around September of 2015, Ms. Josselyn's husband of 30 years suddenly and unexpectedly announced that he wanted a divorce.

19.     As Ms. Josselyn was going through her divorce, the symptoms from her diagnosed anxiety and depression disorders substantially worsened.

20.     Ms. Josselyn's therapist (who is a licensed medical provider as defined by the FMLA and PFLA) prescribed her daily anxiety medication to manage her stress, anxiety, and depression symptoms.

21.     In or around October 2015, at the advice of her psychiatrist, Ms. Josselyn obtained FMLA paperwork from the Company so that she could take intermittent periods of leave when needed based on her worsened anxiety and depression disorders.

22.     In or around October of 2015, Jerry Farnum ("Farnum"), a non-disabled male in his early-40s, became the Store Manager of the Rutland Store and Ms. Josselyn's direct supervisor.

23.     Shortly after Farnum became the Store Manager of the Rutland Store and Ms. Josselyn's direct supervisor, Ms. Josselyn informed Farnum that she (Ms. Josselyn) suffered from severe anxiety and depression disorders and that the symptoms of these disabilities were being exacerbated by the fact that she was going through a divorce.

24.     Upon information and belief, Farnum reacted negatively to Ms. Josselyn's disclosure of her disabilities.

25.     Indeed, around this time, Farnum transferred Ms. Josselyn from her position as "Assistant Team Lead – Merchandizing" to the position of "Assistant Team Lead – Service."

26.     Notably, Farnum promptly filled Ms. Josselyn's former role by hiring Brandie Coolidge ("Coolidge"), a non-disabled woman who was approximately fifteen years younger than Ms. Josselyn, as an Assistant Team Lead – Merchandizing.

27.     On or around October 15, 2015, Ms. Josselyn's therapist filled out the FMLA paperwork provided by the Company and recommended that Ms. Josselyn be provided with intermittent FMLA leave.

28.     Although Ms. Josselyn believed that she was entitled to and needed the intermittent FMLA, Ms. Josselyn did not provided the Defendants with the FMLA paperwork because she (Ms. Josselyn) feared that she would be retaliated against by Store Manager Farnum for requesting FMLA leave.

29.     Notably, Ms. Josselyn's concerns were justified in light of the fact that shortly after Ms. Josselyn had previously notified Farnum of her disabilities, Farnum begun treating Ms. Josselyn in an unduly negative manner.

30.     For example, shortly after Ms. Josselyn notified Farnum of her disabilities, Farnum began giving Ms. Josselyn additional job responsibilities that were outside of the job responsibilities normally associated with her new position as Assistant Team Lead - Service.

31.     Indeed, Farnum often required Ms. Josselyn to unload freight and/or new goods from the backroom of the Rutland Store. Farnum also often required Ms. Josselyn to assist with switching sections of the Rutland Store layout.

32.     Notably, unloading freight and/or new goods from the backroom and/or switching sections of the Rutland Store layout were not the responsibilities of the Assistant Team Lead– Service.

33.     Indeed, the aforementioned duties were the responsibility of lower level
employees and/or Assistant Team Lead–Merchandizing, a position now occupied by the younger
Coolidge.

34.     In or around February of 2016, Ms. Josselyn began being excluded from Assistant
Manager trainings and meetings that the younger Coolidge was attending, despite the fact that
the trainings and meetings were also relevant to her (Ms. Josselyn's) position.

35.     Shortly thereafter, Ms. Josselyn voiced protected concerns to Farnum that she
(Ms. Josselyn) was being excluded from Assistant Manager trainings and meetings seemingly
because of her age, her disability(ies), and/or because she had requested one or more reasonable
accommodations.

36.     In or around March 2016, shortly after Ms. Josselyn voiced these protected
concerns, Ms. Josselyn began being treated more harshly and being held to different standards
than the younger Coolidge.

37.     For example, Farnum began setting unobtainable goals and making ominous and
threatening statements indicating that Ms. Josselyn would be terminated if she could not
complete the unobtainable goals, such as stating "If you can't get it done, I have no problem
replacing you."

38.     Upon information and belief, Farnum knew or should have known that these
goals were unrealistic and unobtainable. Nonetheless, if Ms. Josselyn was allegedly unable to
complete the unobtainable goals, Farnum would harshly reprimand her for failing to complete
the unobtainable goals.

39.     Notably, Farnum did not set similarly unobtainable goals and tasks for the
younger, non-disabled Coolidge. In addition, Farnum did not reprimand Coolidge for failing to

meet goals or perform assigned tasks, even though the younger Coolidge failed to meet goals and failed to perform assigned tasks.

40.     Despite this discriminatory, harassing, and retaliatory treatment, on or around April 1, 2016, Ms. Josselyn received her annual evaluation. Ms. Josselyn's overall rating was "Meets Expectations." Furthermore, Ms. Josselyn was rated as "Meets Expectations" in all sub-categories but one.

41.     Notably, the one category in which Ms. Josselyn was rated as "Fails to Meet Expectations" was "Merchandising," which, as Assistant Team Lead–Service, was not one of Ms. Josselyn's primary responsibilities.

42.     Furthermore, nowhere in the evaluation was it noted that Ms. Josselyn's job was at risk if she did not improve her performance. Indeed, the evaluation explicitly stated that "I am confident that as long as [Ms. Josselyn] focuses on her job duties as outlined by 'Big Lots' in the job description and job duties and executes as defined she will be successful."

43.     The evaluation also noted "[Ms. Josselyn] and her team have consistently surpassed the weekly goal over the last several months. With her continued focus on this company program I am sure we will continue to drive incremental sales."

44.     On or around May 10, 2016, Ms. Josselyn completed a deposit process and noticed that there was a shortage of $204.81. Ms. Josselyn properly complied with what she understood to be proper store procedures in dealing with shortage.

45.     The next morning, a check was found that accounted for the vast majority of the shortage.

46.     Notably, at no point was Ms. Josselyn spoken to or reprimanded for the shortage and/or for failing to follow procedure. Indeed, Ms. Josselyn had followed the exact procedures

she had been previously told to follow when handling shortages and these were the same procedures that other store employees, including Coolidge, had followed.

47.     Notably, those other, non-disabled, younger employees who followed the same shortage procedures utilized by Ms. Josselyn were not reprimanded for failing to follow any alleged Company policy.

48.     Shortly before Memorial Day 2016, Farnum demanded that Ms. Josselyn fix a large amount of employee paperwork that Farnum and Coolidge had improperly filled out.

49.     Farnum informed Ms. Josselyn that she had one week to fix all of the paperwork (in addition to performing her normal job responsibilities) or she would be reprimanded.

50.     Notably, the younger Coolidge was not reprimanded for filling out the paperwork incorrectly, nor was she required to help fix the mistakes.

51.     On or around May 27, 2016, Ms. Josselyn was bedridden and left incapacitated by a severe anxiety attack stemming from her disability.

52.     Despite the fact that the severe anxiety attack left Ms. Josselyn unable to leave her bed, she (Ms. Josselyn) made sure that the Company was notified that she was having a severe anxiety attack and would be unable to work that day.

53.     Notably, Ms. Josselyn had accrued sick time that she was permitted to use for sicknesses and/or disability related absences at the time that she missed work due to her severe anxiety attack.

54.     As such, on or around May 27, 2016, Ms. Josselyn requested the reasonable accommodation of being permitted to use her sick time to deal with her disability-related attack.

55.     Notably, younger and/or non-disabled employees were regularly allowed to use sick time for minor illnesses and/or illness related absences.

56. Likewise, on or around May 27, Ms. Josselyn contacted her therapist to discuss the severe anxiety attack that had left her bedridden. The therapist informed Ms. Josselyn that she (Ms. Josselyn) was not medically able to return to work until she was reevaluated by the therapist, as it was clear that work was exacerbating Ms. Josselyn's anxiety and depression.

57. Indeed, it was clear that returning to work was a serious medical risk until a revised course of treatment or appropriate reasonable accommodations could be established. Ms. Josselyn's therapist scheduled a reevaluation of Ms. Josselyn for Tuesday May 31, 2016.

58. Ms. Josselyn promptly informed the Company that her therapist had ordered her to stay out of work until the therapist could reevaluate her (Ms. Josselyn) and establish a course of treatment and/or appropriate reasonable accommodations.

59. Ms. Josselyn requested a reasonable accommodation in the form of a temporary leave of absence until Wednesday, June 1, 2016.

60. This reasonable accommodation request was also request for a temporary leave of absence for a serious health condition and/or serious illness as covered under the FMLA and PFLA.

61. The Company granted Ms. Josselyn's reasonable accommodation request and informed her that she would be permitted to take a temporary leave of absence for the requested time period.

62. Ms. Josselyn was further informed that when she received a note from her medical provider permitting her to return to work, Ms. Josselyn would be permitted to return to her old job.

63. On or around May 31, 2016, Ms. Josselyn underwent psychiatric evaluation by her therapist. Ms. Josselyn's therapist informed her that she (Ms. Josselyn) was suffering from

severe stress, anxiety, and depression, which had been worsened by the discriminatory work environment she was being subjected to at the Company.

64.     Although the therapist cleared Ms. Josselyn to return to work, the therapist noted that some reasonable accommodations would be important, such as permitting Ms. Josselyn to leave work early if she (Ms. Josselyn) felt an anxiety attack coming on.

65.     This reasonable accommodation request was also a request for intermittent leave under the FMLA and PFLA.

66.     Ms. Josselyn's therapist provided her with a note from her therapist and FMLA paperwork requesting intermittent leave to deal with the anxiety attacks.

67.     On or around June 1, 2016, Ms. Josselyn returned to work at the Company. As Farnum was out on vacation that day, Ms. Josselyn contacted District Manager Joe Camar ("Camar") to discuss her therapist's diagnosis, the requested reasonable accommodations, and the completed FMLA paperwork. Notably, Camar was Farnum's supervisor and thus the second level supervisor above Ms. Josselyn in the Company's chain of command.

68.     When she contacted Camar on June 1, Ms. Josselyn informed Camar of her disabilities, her requested reasonable accommodations, and the completed FMLA paperwork that she wanted to submit to the Company.

69.     Camar did not seem interested in discussing Ms. Josselyn's disabilities, her requested accommodations, or her completed FMLA paperwork. Indeed, Camar ignored all of Ms. Josselyn's attempts to engage in an interactive dialogue and instead instructed Ms. Josselyn to fax the therapist's note to human resources.

70.     Ms. Josselyn asked Camar if she should also fax the completed FMLA paperwork to human resources.

71.     Strangely, Camar told Ms. Josselyn that she should only fax the doctor's note to human resources and should not send the completed FMLA paperwork to human resources.

72.     Pursuant to Camar's instructions, Ms. Josselyn faxed the doctor's note to HR.

73.     On or around June 2, 2016, Farnum returned from vacation.

74.     That same day, Ms. Josselyn provided Store Manager Farnum with a copy of her (Ms. Josselyn's) therapist's note and the intermittent FMLA paperwork. Farnum specifically confirmed to Ms. Josselyn that he had received her FMLA paperwork requesting intermittent FMLA leave, as well as the note from her medical provider releasing her to return to work.

75.     Towards the end of Ms. Josselyn's shift on or around June 2, Ms. Josselyn began to have another severe anxiety attack.

76.     As a result, Ms. Josselyn asked Farnum if she could end her shift early and noted that she was beginning to have another severe anxiety attack. Farnum informed Ms. Josselyn that it would be okay if she left her shift early.

77.     Notably, Farnum did not inform Ms. Josselyn that she might face punishment for leaving her shift early as he had given her permission to do and gave every indication that she had permission to leave early.

78.     Indeed, as Farnum directly told Ms. Josselyn that she could leave early, it was her understanding based on her interaction with Farnum that the Company had given her permission to leave and would consider this to be an excused disability-related event pursuant to her requested reasonable accommodation and/or an intermittent leave under the FMLA.

79.     Indeed, when he gave her permission to leave, Farnum told Ms. Josselyn that he would enter the remaining hours in Ms. Josselyn's shift as sick time. Notably, at the time that Farnum said he would enter the time associated with Ms. Josselyn's early departure as sick time,

Ms. Josselyn still had accrued and unused sick time available under Company policy for her to use.

80.     On or around June 4, 2016, Ms. Josselyn's next scheduled work day following her June 2, 2017 anxiety attack, Ms. Josselyn arrived to work 15 minutes before the start of her scheduled shift.

81.     Shortly after she arrived at work on June 4 (less than a week after she had informed Farnum and Camar both verbally and in writing of her intermittent FMLA request and her need for a reasonable accommodation related to her disabling condition), Farnum informed Ms. Josselyn that she was being fired, allegedly for leaving work early on June 2.

82.     Upon information and belief, the firing decision was made by Camar and Farnum.

83.     Upon information and belief, the firing decision was made in, and the firing took place in, Vermont.

84.     This firing was clearly illegitimate since the Company gave Ms. Josselyn permission to leave early on June 2 and her departure was also a protected intermittent leave, as well as a protected disability-related accommodation.

85.     Furthermore, other non-disabled, younger Company employees were not fired for leaving early even though they did not have a disability and/or did not have a medically necessary reason for leaving early and, unlike Ms. Josselyn, had not requested intermittent FMLA leave.

86.     Upon information and belief, the Company replaced Ms. Jossleyn with a non-disabled person who was more than 5 years younger than Ms. Josselyn.

87.     Furthermore, following Ms. Josselyn's termination, she was contacted by her insurance company who informed Ms. Josselyn that her health insurance had been canceled by the Company on or around June 2 due to her termination.

88.     Upon information and belief, the Company actually terminated Ms. Josselyn on or around the end of the day on June 2, less than a week after she notified the Company of her need for a reasonable accommodation and/or intermittent FMLA leave and the same day that Ms. Josselyn had presented FMLA paperwork to Farnum and/or requested a reasonable accommodation in the form of leaving early to deal with a severe anxiety attack.

89.     The Company employed 15 or more employees during 20 or more calendar weeks during all relevant calendar years.

90.     The Company employed 500 or more employees during 20 or more calendar weeks during all relevant calendar years.

91.     On or around December 19, 2016, Ms. Josselyn timely filed a Charge of Discrimination (the "Charge") with the Vermont Attorney General's Office ("VTAG") (Charge No. 2016-07694) and the Equal Employment Opportunity Commission (Charge No. 16K-2017-00037C).

92.     On or around October 13, 2017, the Company submitted a position statement to the VTAG, which included a number of exhibits.

93.     Among the exhibits were a number of supposed warnings that in fact had never been shown to Ms. Josselyn, and upon information and belief were fraudulently created to improperly justify her termination.

94.     For example, the Company submitted to the VTAG a supposed warning allegedly issued on May 16, 2016, in which Farnum alleged that Ms. Josselyn had failed to properly notify certain individuals as required by Company policy of the shortfall on May 10, 2016.

95.     The alleged warning states that Ms. Josselyn had refused to sign the warning. However, Farnum never showed Ms. Josselyn the alleged warning, nor did Farnum ever tell Ms. Josselyn that she was being issued a warning for the alleged shortfall. As such, it would have been impossible for Ms. Josselyn to refuse to sign the warning, as she was never informed that it existed.

96.     Upon information and belief, other younger and/or non-disabled employees, as well as employees who had not engaged in protected activities, were not issued reprimands when they followed the same procedures as Ms. Josselyn related to shortages and/or failed to follow Company procedures with regard to shortages.

97.     A second supposed written reprimand dated May 23, 2016 was also secretly added to Ms. Josselyn's file.  Shockingly, the written reprimand purported to punish Ms. Josselyn for the fact that she had received a "Fails to Meet Expectations" in one sub-category of her February 10, 2016 performance review (which, notably, Ms. Josselyn did not receive until April 1, 2016), despite the fact that she had received an overall rating on the performance review of "meets expectations."

98.     Importantly, Ms. Josselyn was never told about or shown the secret May 23 reprimand.   Upon information and believe, the alleged May 23 reprimand was likewise fraudulently created to improperly justify Ms. Josselyn's termination.

99.     Furthermore, even if Ms. Josselyn had been informed about the May 23 reprimand (which she wasn't), it was inappropriate to discipline Ms. Josselyn solely because she received a low rating on one sub-category of a review that gave her an overall satisfactory rating.

100.    Upon information and belief, other younger and/or non-disabled employees, as well as employees who had not engaged in protected activities, were not issued formal reprimands after receiving ratings of "Fails to Meet Expectations" on one or more sub-categories of their performance reviews.

101.    It seems clear that these illegitimate secret reprimands were clearly an effort to retroactively paper the file to provide justification for the unlawful termination of Ms. Josselyn and/or were a retaliatory punishment for Ms. Josselyn's previous protected activity.

102.    On or around November 16, 2017, Ms. Josselyn notified the VTAG of her intent to file a complaint with Superior Court and, accordingly, requested that the VTAG withdraw the Charge.

103.    On or around November 20, 2017, the EEOC provided Ms. Josselyn with a Notice of a Right to Sue letter.

104.    This Complaint is timely filed in compliance with the timeframes of relevant laws and requirements.

## COUNT I

**(Disability Discrimination in Violation of 21 V.S.A. §§ 495, et seq.)**

### Plaintiff v. Defendants

105.    The Plaintiff herein incorporates the previous allegations set forth in paragraphs 1-104.

106.    The Company is an employer under the definitions of 21 V.S.A. §§ 495, et seq. (hereinafter, the "Vermont Fair Employment Practices Act" or "VT FEPA") because it is a corporation doing business in the State of Vermont and has one or more individuals performing services for the Company in the State of Vermont.

107.    Ms. Josselyn suffered from disability(ies) under the VT FEPA because she had one or more physical and/or mental impairments, including depression and anxiety disorders, that substantially limited one or more major life activities, such as communicating, focusing, and/or thinking; because Ms. Josselyn had a record of such impairment(s); and/or because the Company regarded Ms. Josselyn as having such impairment(s).

108.    At all relevant times, Ms. Josselyn was a qualified individual with disability(ies) and was capable of performing the essential functions of her job with or without a reasonable accommodation.

109.    On one or more occasions, Ms. Josselyn requested a reasonable accommodation and/or made it clear that she needed a reasonable accommodation to perform the essential functions of her job, including, but not limited to, the accommodation of taking temporary and/or intermittent leaves of absences and/or the ability to leave work early when she began suffering from anxiety attacks.

110.    The Company, by and through its agents, including, but not limited to, Farnum and Camar, discriminated against Ms. Josselyn due to her disability(ies), failed to provide reasonable accommodations related to the known physical and/or mental limitations of the otherwise qualified Ms. Josselyn, and/or refused to engage in an interactive dialogue with her (Ms. Josselyn) concerning her disability(ies) and/or concerning the accommodations that she requested.

111.    The Company, by and through its agents, including, but not limited to, Farnum and Camar, further discriminated against Ms. Josselyn due to her disability(ies) by subjecting Ms. Josselyn to adverse actions, including, but not limited to subjecting Ms. Josselyn to a harassing and otherwise hostile work environment due to her disability(ies); limiting, segregating, or classifying Ms. Josselyn in a way that adversely affected the opportunities and/or status of Ms. Josselyn due to her disability(ies); failed to provide reasonable accommodations related to Ms. Josselyn's diability; and/or terminating Ms. Josselyn's employment due to her disability(ies).

112.    Farnum and Camar aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Plaintiff due to her disability, and/or knew of their supporting role in an enterprise designed to deprive Plaintiff of the rights guaranteed to her under VT FEPA.

113.    The Defendants' acted recklessly or wantonly without regard for the Plaintiff's rights, and/or showed personal ill will to the Plaintiff in injuring her, and/or acted with evident insult or oppression towards the Plaintiff.

114.    As a direct and proximate result of the Company's violations of the VT FEPA, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

115.    Plaintiff seeks all damages to which she is entitled, including, but not limited to: compensatory damages (including, but not limited to, emotional distress damages and lost compensation and benefits, including back pay, front pay, and reduced earning capacity), punitive damages, interest, attorneys' fees and costs.

## Count II

### (Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12101 et seq.)
### Plaintiff v. the Company

116.    The Plaintiff herein incorporates the previous allegations set forth in paragraphs 1-115.

117.    During all relevant times, the Company was an employer under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (hereinafter, "ADA") because the Company employed 15 or more individuals during 20 or more calendar weeks during all relevant calendar years.

118.    Ms. Josselyn suffered from disability(ies) under the ADA because she had one or more physical and/or mental impairment, including depression and anxiety disorders, that substantially limited one or more major life activities, such as communicating, focusing, and/or thinking; because Ms. Josselyn had a record of such impairments; and/or because the Company regarded Ms. Josselyn as having such impairments.

119.    At all relevant times, Ms. Josselyn was a qualified individual with one or more disabilities and was capable of performing the essential functions of her job with or without a reasonable accommodation.

120.    On one or more occasions, Ms. Josselyn requested a reasonable accommodation and/or made it clear that she needed a reasonable accommodation to perform the essential functions of her job, including, but not limited to, the accommodation of taking temporary and/or intermittent leaves of absences and/or the ability to leave work early when she began suffering from anxiety attacks.

121.    The Company, by and through its agents, including, but not limited to, Farnum and Camar, discriminated against Ms. Josselyn due to her disability(ies), failed to provide reasonable accommodations related to the known physical and/or mental limitations of the otherwise qualified Ms. Josselyn, and/or refused to engage in an interactive dialogue with her (Ms. Josselyn) concerning her disability(ies) and/or concerning the accommodations that she requested.

122.    The Company, by and through its agents, including, but not limited to, Farnum and Camar, further discriminated against Ms. Josselyn due to her disability(ies) by subjecting Ms. Josselyn to adverse actions, including, but not limited to subjecting Ms. Josselyn to a harassing and otherwise hostile work environment due to her disability(ies); limiting, segregating, or classifying Ms. Josselyn in a way that adversely affected the opportunities and/or status of Ms. Josselyn due to her disability(ies); failed to provide reasonable accommodations related to Ms. Josselyn's disability; and/or terminating Ms. Josselyn's employment due to her disability(ies).

123.    The Company acted with malice and/or reckless indifference to the federally protected rights of Ms. Josselyn.

124.    As a direct and proximate result of the Company's violations of the ADA, Ms. Josselyn has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

125.    Ms. Josselyn seeks all damages to which she is entitled, including, but not limited to compensatory damages (including, but not limited to, emotional distress damages and lost

compensation and benefits, including back pay, front pay, and reduced earning capacity),

punitive damages, interest, attorneys' fees and costs.

## COUNT III

### (Age Discrimination in Violation of 21 V.S.A. §§ 495, et seq.)

### Plaintiff v. Defendants

126.    The Plaintiff herein incorporates the previous allegations set forth in paragraphs

1-125.

127.    At all relevant times, the Plaintiff was over 18 years old.

128.    The Company, by and through its agents, including, but not limited to, Farnum,

harassed and discriminated against Plaintiff with respect to her compensation, terms, conditions,

or privileges of employment, because of Plaintiff's age.

129.    More specifically, the Company subjected Plaintiff to adverse actions, including,

but not limited to, a hostile and harassing workplace and the termination of Plaintiff's

employment because of Plaintiff's age.

130.    Farnum and Camar aided and abetted in the Company's harassing and

discriminatory actions, intended to discriminate against Plaintiff due to her age, and/or knew of

their supporting role in an enterprise designed to deprive Plaintiff of the rights guaranteed to her

under VT FEPA.

131.    The Defendants' acted recklessly or wantonly without regard for the Plaintiff's

rights, and/or showed personal ill will to the Plaintiff in injuring her, and/or acted with evident

insult or oppression towards the Plaintiff.

132.     As a direct and proximate result of the Company's violations of VT FEPA,
Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost
compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life,
and emotional damages.

133.     Plaintiff seeks all damages to which she is entitled, including, but not limited to:
compensatory damages (including, but not limited to, emotional distress damages and lost
compensation and benefits, including back pay, front pay, and reduced earning capacity),
punitive damages, interest, attorneys' fees and costs.

## COUNT IV

### (Age Discrimination in Violation of the ADEA, 29 U.S.C. §§ 621 et seq.)

### Plaintiff v. the Company

134.     The Plaintiff herein incorporates the previous allegations set forth in paragraphs
1-133.

135.     During all relevant times the Company was an employer under the Age
Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (hereinafter, "ADEA") because the
Company employed 20 or more individuals during 20 or calendar weeks during the relevant
calendar years.

136.     The Company, by and through its agents, including, but not limited to, Farnum
and Camar, harassed and discriminated against Plaintiff with respect to her compensation, terms,
conditions, or privileges of employment, because of she was over 40 years old and/or because of
the Plaintiff's age.

137.    More specifically, the Company subjected Plaintiff to adverse actions, including, but not limited to, a hostile and harassing workplace and the termination of Plaintiff's employment because of Plaintiff's age and/or because Plaintiff was over 40 years old.

138.    The Company willfully violated the ADEA because the Company knew its conduct was prohibited by the ADEA and/or because the Company showed a reckless disregard for whether the Company's conduct was prohibited by the ADEA.

139.    As a direct and proximate result of the Company's violations of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

140.    Plaintiff seeks all damages to which she is entitled, including, but not limited to compensatory damages (including, but not limited to, emotional distress damages and lost compensation and benefits, including back pay, front pay, and reduced earning capacity), punitive and/or liquidated damages, interest, attorneys' fees, and costs.

## COUNT V

### (Retaliation in Violation of 21 V.S.A. §§ 495, et seq.)

### Plaintiff v. Defendants

141.    The Plaintiff herein incorporates the previous allegations set forth in paragraphs 1-140.

142.    Plaintiff engaged in protected activity under VT FEPA, including, but not limited to, (i) by opposing a practice made unlawful by VT FEPA, including, but not limited to, by protesting age discrimination and/or disability discrimination; (ii) requesting one or more reasonable accommodations; and (iii) utilizing one or more reasonable accommodations.

143.    The Defendants discriminated against and/or retaliated against Plaintiff for engaging in protected activity under VT FEPA, including, but not limited to, by subjecting Ms. Josselyn to adverse actions, including, but not limited to, a hostile and harassing workplace and the termination of Ms. Josselyn's employment.

144.    Farnum and Camar aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Plaintiff due to her age, and/or knew of their supporting role in an enterprise designed to deprive Plaintiff of the rights guaranteed to her under VT FEPA.

145.    The Defendants' acted recklessly or wantonly without regard for the Plaintiff's rights, and/or showed personal ill will to the Plaintiff in injuring her, and/or acted with evident insult or oppression towards the Plaintiff.

146.    As a direct and proximate result of the Defendants' violations of VT FEPA the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

147.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to: compensatory damages (including, but not limited to, emotional distress damages and lost compensation and benefits, including back pay, front pay, reduced earning capacity), punitive damages, interest, attorneys' fees and costs.

## COUNT VI

### (Retaliation in Violation of the ADEA, 29 U.S.C. §§ 621 et seq.)

### Plaintiff v. the Company

148.    The Plaintiff herein incorporates the previous allegations set forth in paragraphs 1-147.

149.    The Plaintiff engaged in protected activity under the ADEA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or (ii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Ms. Josselyn's age.

150.    The Company discriminated against and/or retaliated against Ms. Josselyn for opposing, voicing protected concerns, and/or engaging in other protected activity related to one or more practices made unlawful by the ADEA by subjecting Ms. Josselyn to adverse actions, including, but not limited to, a hostile and harassing workplace and the termination of Ms. Josselyn's employment.

151.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Josselyn's exercising of, or enjoyment of, one or more rights granted by the ADEA.

152.    The Company willfully violated the ADEA because the Company knew its conduct was prohibited by the ADEA and/or because the Company showed a reckless disregard for whether the Company's conduct was prohibited by the ADEA.

153.    As a direct and proximate result of the Company's violations of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

154.     The Plaintiff seeks all damages to which she is entitled, including, but not limited to: compensatory damages (including, but not limited to, emotional distress damages and lost compensation and benefits, including back pay, front pay, and reduced earning capacity), punitive and/or liquidated damages, interest, attorneys' fees and costs.

### COUNT VII

### (Retaliation in Violation of the ADA, 42 U.S.C. § 12101 et seq.)

### Plaintiff v. the Company

155.     The Plaintiff herein incorporates the previous allegations set forth in paragraphs 1-154.

156.     The Plaintiff engaged in protected activity under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Ms. Josselyn's disability(ies); (ii) requesting reasonable accommodations for disability(ies) which were intended to allow Ms. Josselyn to perform the essential functions of her job; and/or (iii) utilizing one or more reasonable accommodations related to her disabilities.

157.     The Company discriminated against and/or retaliated against Ms. Josselyn for engaging in protected activity under the ADA by subjecting Ms. Josselyn to adverse actions, including, but not limited to, a hostile and harassing workplace and the termination of Ms. Josselyn's employment.

158.     The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Josselyn's exercising of, or enjoyment of, one or more rights granted by the ADA.

159.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Josselyn.

160.     As a direct and proximate result of the Company's violations of the ADA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

161.     The Plaintiff seeks all damages to which she is entitled, including, but not limited to: compensatory damages (including, but not limited to, emotional distress damages and lost compensation and benefits, including back pay, front pay, and reduced earning capacity), punitive damages, interest, attorneys' fees and costs.

## COUNT VIII

**(Interference with Rights Under the Family Medical Leave Act – 29 U.S.C. § 2615)**

**Plaintiff v. Defendants**

162.     The Plaintiff herein incorporates the previous allegations set forth in paragraphs 1-161.

163.     Ms. Josselyn was an eligible employee because she had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

164.     Furthermore, the Company worksite at which Ms. Josselyn worked employed 50 or more employees and/or 50 or more employees were employed within 75 miles of that worksite.

165.     The Company is (and all relevant times was) an employer under the FMLA because it was engaged in an industry affecting commerce and employed 50 or more employees during each relevant calendar year.

166.    Farnum and Camar were employers under the FMLA because they had the power to hire and/or fire the Plaintiff (and, in fact, used this power to fire the Plaintiff), supervised and controlled the Plaintiff's conditions of employment including her work schedule, played a role in determining the Plaintiff's rate and method of payment, and/or played a role in maintaining the Plaintiff's employment records.

167.    Ms. Josselyn suffered from one or more serious health conditions, including, but not limited to, depression and anxiety disorders.

168.    The Defendants, including the Company, Farnum, and Camar, interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Ms. Josselyn's rights under the FMLA.  More specifically, the Company retroactively improperly denied Ms. Josselyn's requested intermittent FMLA leave, and terminated Ms. Josselyn's employment due, in whole or in part, to this improper retroactive denial.

169.    Furthermore, the Defendants did not restore Ms. Josselyn to her prior position as required by the FMLA after Ms. Josselyn utilized intermittent FMLA leave and then returned to work.  Indeed, after Ms. Josselyn utilized intermittent FMLA leave, the Company did not restore Ms. Josselyn to her position and promptly terminated Ms. Josselyn.

170.    The Defendants actions were willful and in bad faith.

171.    As a direct and proximate result of the Company's violations of the FMLA, Ms. Josselyn has suffered and continues to suffer damages, including, but not limited to, lost employment compensation and benefits, reduced earning capacity, emotional distress and suffering, attorney's fees, and costs.

172.    Ms. Josselyn seeks all damages to which she is entitled, including, but not limited to compensatory damages (including, but not limited to, emotional distress damages and lost

compensation and benefits, including back pay, front pay, and reduced earning capacity),

liquidated damages, interest, attorney's fees, and costs.

## COUNT IX

### (Retaliation for Exercising Rights under the Family Medical Leave Act – 29 U.S.C. §2615)

#### Plaintiff v. Defendants

173.    The Plaintiff herein incorporates the previous allegations set forth in paragraphs
1-172.

174.    Ms. Josselyn sought to exercise her rights under the FMLA, including, but not

limited to, by requesting both continuous and intermittent leaves under the FMLA, requesting

information regarding her eligibility for FMLA leave, requesting information regarding her

entitlement to leave under the FMLA, and/or utilizing one or more protected leaves under the

FMLA.

175.    The Defendants, including the Company, Farnum, and Camar, retaliated and/or

discriminated against Ms. Josselyn for requesting and/or utilizing FMLA leave by subjecting Ms.

Josselyn to adverse actions, including, but not limited to, a hostile and harassing work

environment and/or terminating Ms. Josselyn's employment.

176.    The Defendants' actions were willful and in bad faith.

177.    As a direct and proximate result of the Company's violations of the FMLA, Ms.

Josselyn has suffered and continues to suffer damages, including, but not limited to, lost

employment compensation and benefits, reduced earning capacity, emotional distress and

suffering, attorney's fees, and costs.

178.    Ms. Josselyn seeks all damages to which she is entitled, including, but not limited

to compensatory damages (including, but not limited to, emotional distress damages and lost

compensation and benefits, including back pay, front pay, and reduced earning capacity),

liquidated damages, interest, attorney's fees, and costs.

## COUNT X

**(Interference with Rights Under the Vermont Parental and Family Leave Act - 21 VSA §**

**472)**

### Plaintiff v. Defendants

179.    The Plaintiff herein incorporates the previous allegations set forth in paragraphs

1-178.

180.    Ms. Josselyn was an employee under the PFLA because she had worked for the

Company for 12 or more months and had worked an average of 30 or more hours per week

during the relevant time periods.

181.    The Company is (and all relevant times was) an employer under the PFLA

because it was a company doing business in and/or operating within the State of Vermont and

employed at 15 or more individuals for an average of at least 30 hours per week during the

relevant years.

182.    Ms. Josselyn suffered from one or more serious illnesses, including, but not

limited to, depression and anxiety disorders.

183.    The Defendants, including the Company, Farnum, and Camar, interfered with,

restrained, and/or denied the exercise of, or the attempted exercise of, Ms. Josselyn's rights

under the PFLA. More specifically, the Company retroactively improperly denied Ms.

Josselyn's requested intermittent PFLA leave, and terminated Ms. Josselyn's employment due, in

whole or in part, to this improper retroactive denial.

184.     Furthermore, the Defendants did not restore Ms. Josselyn to her prior position as required by the PFLA after Ms. Josselyn utilized intermittent PFLA leave.  Indeed, after Ms. Josselyn utilized intermittent PFLA leave, the Company immediately terminated Ms. Josselyn's employment.

185.     Farnum and Camar aided and abetted in the Company's harassing and retaliatory actions, intended to interfere with the Plaintiff's rights under PFLA, and/or knew of their supporting role in an enterprise designed to deprive Plaintiff of the rights guaranteed to her under PFLA.

186.     As a direct and proximate result of the Defendants' violations of PFLA the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

187.     The Plaintiff seeks all damages to which she is entitled, including, but not limited to: compensatory damages (including, but not limited to, emotional distress damages and lost compensation and benefits, including back pay, front pay, reduced earning capacity), punitive damages, interest, attorneys' fees and costs.

## COUNT XI

**(Retaliation for Exercising Rights under the Vermont Parental and Family Leave Act - 21 VSA § 472)**

**Plaintiff v. Defendants**

188.     The Plaintiff herein incorporates the previous allegations set forth in paragraphs 1-187.

189.     Ms. Josselyn sought to exercise her rights under the PFLA, including, but not limited to, by requesting continuous and/or intermittent leave under the PFLA, requesting information regarding her eligibility for PFLA leave, requesting information regarding her entitlement to leave under the PFLA, and/or utilizing a protected leave under the PFLA.

190.     The Company, by and through its agents, retaliated and/or discriminated against Ms. Josselyn for requesting and/or utilizing PFLA leave by subjecting Ms. Josselyn to adverse actions, including, but not limited to, a hostile and harassing work environment and/or terminating Ms. Josselyn's employment.

191.     Farnum and Camar aided and abetted in the Company's harassing and retaliatory actions, intended to retaliate against the Plaintiff for utilizing leave under PFLA, and/or knew of their supporting role in an enterprise designed to deprive Plaintiff of the rights guaranteed to her under PFLA.

192.     As a direct and proximate result of the Defendants' violations of PFLA the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

193.     The Plaintiff seeks all damages to which she is entitled, including, but not limited to: compensatory damages (including, but not limited to, emotional distress damages and lost compensation and benefits, including back pay, front pay, reduced earning capacity), punitive damages, interest, attorneys' fees and costs.

WHEREFORE, the plaintiff, Lisa Josselyn, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B. Find the Defendants liable on all counts;

C. Award the Plaintiff compensatory damages, including, but not limited to, back pay, front pay, reduced earning capacity, and emotional distress;

D. Award the Plaintiff liquidated damages;

E. Award the Plaintiff punitive damages;

F. Award the Plaintiff her attorney's fees;

G. Award the Plaintiff interest and costs;

H. Award the Plaintiff all other damages to which she is entitled; and

I. Grant such further relief as is just and equitable.

Respectfully Submitted,

LISA JOSSELYN

By her attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: 1/9/2018          By:

Benjamin J. Wyatt, VT Bar #: 5466
BWyatt@Wyattlegalservices.com

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868